IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KEVIN ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 3:24-cv-747-ECM |
| ) | [WO] |
| HEATH TAYLOR, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

On November 25, 2022, Kevin Allen ("Allen"), a pretrial detainee, slipped and fell in a Russell County Jail ("the Jail") shower, suffering injuries. On November 20, 2024, Allen sued several defendants, including Michael Thompson ("Thompson"), asserting federal and state law claims arising out of the injuries he suffered from his fall. Allen brings the following claims against Thompson: (1) a claim that Thompson violated his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") (Count I); (2) deliberate indifference claims pursuant to 42 U.S.C. § 1983 (Counts II and IV); and (3) an Alabama law negligence claim (Count V). (*See generally* doc. 1).[1]

Now pending before the Court is Thompson's motion to dismiss. (Doc. 37). The motion is fully briefed and ripe for review. Based on a thorough review of the record, briefs, and applicable law, and for the following reasons, the Court finds that Thompson's motion to dismiss is due to be GRANTED.

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the federal law claims in this case pursuant to 28 U.S.C. §§ 1331 and 1343, and the Court has supplemental jurisdiction over the related state law claims pursuant to § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8(a)(2): "a short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

2

Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.  FACTS[2]

In 2022, Allen arrived at the Jail as a pretrial detainee. (Doc. 1 at 5, para. 16). Before he arrived, he had suffered for decades from a degenerative bone disease and been injured in a recent car accident, requiring him to use a cane to balance. (*Id.* at 5, paras. 11–16). Upon his arrival, Jail "employees and staff" were "made aware" of Allen's need for mobility aids and provided him a wheelchair. (*Id.* at 5, paras. 17–18). Thompson served as a Jail shift sergeant, was "first in command" when on duty, and was responsible for inmates' living assignments. (*Id.* at 1, 10 paras. 4, 48). Thompson "repetitively pulled . . . ADA laws and regulations up before [Allen's] fall and admitted to Defendants [Steve] Johnson and [Paul] Weatherly that the Jail was not in compliance with the ADA." (*Id.* at 10, para. 49). According to the complaint, Heath Taylor and Steve Johnson "were responsible for the overall supervision and daily operations of the Jail, including [the] ADA compliance [of showers therein]." (*Id.* at 9, paras. 45–46). Someone assigned Allen to an area of the Jail with showers that lacked guardrails or chairs. (*Id.* at 6–7 paras. 20–21, 26). Thompson did not reassign Allen to an area with showers with such accommodations. (*Id.* at 10, para. 48).

---

[2] At the motion to dismiss stage, the Court "must view the complaint in the light most favorable to [Allen] and accept all of [Allen's] well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citation omitted).

3

On or around November 25, 2022, while "attempting to maneuver" in the shower, Allen slipped and hit his head. (*Id.* at 7, para. 27). He lost consciousness and was left lying on the floor "for a long period of time." (*Id.*). From the fall, Allen injured his right knee and later suffered a bone infection. (*Id.* at 7–8, paras. 28–44).

## IV.  DISCUSSION

In Count I, Allen alleges that Thompson violated his rights under the ADA by failing to change Allen's living assignment to an ADA compliant cell—one with a properly-equipped shower. (*See* doc. 1 at 10–14, paras. 48–53, 55–60, 63, 65–70). In Count II, Allen alleges that Thompson was deliberately indifferent in violation of the Eighth and Fourteenth Amendments because he failed to assign Allen to an ADA-compliant living area. (*See id.* at 15–16, paras. 71–79). In Count IV, Allen alleges "supervisory liability" under § 1983. (*See id.* at 18–19, paras. 91–94, 97, 99–102). Finally, in Count V, Allen asserts an Alabama law negligence claim. (*See id.* at 19–20, paras. 103–05, 107, 110).

Thompson argues that the Court should dismiss all the claims against him. He contends that Allen cannot hold him individually liable under Title II of the ADA (Count I). He also invokes qualified immunity as to Allen's § 1983 claims (Counts II and IV) and state law immunity as to Allen's negligence claim (Count V). The Court addresses each argument in turn.

**A.    Count I:  ADA Claim**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities *of a public entity*, or be subjected to discrimination *by any*

4

*such entity*." 42 U.S.C. § 12132 (emphasis added).  Pertinently, § 12131 defines "public entity" as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  To be sure, a state facility is operated by a "public entity." *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998)).  The term "public entity" does not, however, include individuals. *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005)[3] (per curiam) ("[T]here is no individual capacity liability under Title II of the ADA . . . ." (citation omitted)).

Allen concedes that Thompson cannot be held liable under Title II of the ADA in his individual capacity; Allen further clarifies that he proceeds with Count I against Thompson in his official capacity. (Doc. 47 at 5–6).  Where a plaintiff's suit is against "[d]efendants in their official capacity, then [the] [p]laintiff's suit is actually against [the] [d]efendants' employer." *Hunt v. Warden*, 748 F. App'x 894, 898 (11th Cir. 2018) (citation omitted); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State." (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Accordingly, Allen's claim against Thompson in his official capacity is permitted under the ADA.

Nevertheless, "to impose *official* liability on a government entity amenable to suit, a plaintiff need do no more than name the government entity defendant; it is unnecessary also to name specific agents." *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993)

---

[3] The Court here, and elsewhere in this Opinion, cites to nonbinding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

5

(emphasis in original).  Indeed, because an official-capacity suit is treated as a suit against the employer, several courts in the Eleventh Circuit have dismissed official-capacity claims against an employee as duplicative where their employer was also sued. *See, e.g.*, *Parker v. Univ. of Ala. Police Dep't*, 759 F. Supp. 3d 1193, 1202 (N.D. Ala. 2024) (dismissing official capacity claims against individual supervisors as duplicative where board of trustees was sued); *Simpson v. State*, 2016 WL 820946, at *8 (N.D. Ala. 2016) (dismissing official capacity claims against employees of department as duplicative when department itself was sued); *Ginwright v. Dep't of Revenue for Ala.*, 2013 WL 1187943, at *3 (M.D. Ala. 2013) (dismissing suit against director, commissioner, and coordinator of department when department was sued); *see also, e.g.*, *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming directed verdict for official capacity defendants when employer was also a defendant because "[t]o keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury"); *Burks v. Coastal Ala. Cmty. Coll.*, 2020 WL 3405236, at *3 (S.D. Ala. 2020) (denying motion to amend complaint to add official-capacity claims against individual defendants where employer was also sued).

Here, Thompson's employer, who Allen alleges had "responsib[ility] for the overall operation and maintenance of the . . . Jail," is Russell County Sheriff, Heath Taylor, against whom relief is also sought on Count I. (Doc. 1 at 2, 12, paras. 2, 56).  Pursuing a claim against the employer and through its employee in his official capacity at the same time for the same relief is duplicative. Accordingly, Thompson's motion to dismiss is due to be GRANTED as to Count I.

B.     **Counts II & IV:  § 1983 Claims**

In Count II, Allen alleges that Thompson's failure to assign him to an ADA-compliant living area constituted deliberate indifference in violation of the Eighth and Fourteenth Amendments. (*See* doc. 1 at 4, 15–16, paras. 8, 71–79).  "In the case of a pretrial detainee[,] . . . 'the Eighth Amendment prohibitions against cruel and unusual punishment do not apply.'" *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir. 1994)).  "[U]nder the Supreme Court's current framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers 'those who exist in the in-between—pretrial detainees.'" *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) (quoting *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019)).  Accordingly, for Allen, a pretrial detainee during the events alleged in the complaint, the Eighth Amendment does not apply; the Fourteenth Amendment does.[4]  Thus, to the extent Allen asserts a claim for a violation of the Eighth Amendment, the motion to dismiss is due to be GRANTED.

In Count IV, Allen alleges "supervisory liability" under § 1983. (*See* doc. 1 at 18–19, paras. 91–94, 97, 99–102).  Upon review of the allegations asserted in Count IV, the theory of Thompson's liability is that Thompson "failed to ensure that [Allen]'s living

---

[4] In any event, "the minimum standard allowed by the [Fourteenth Amendment's] due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons." *Cook*, 402 F.3d at 1115 (quoting *Hamm v. DeKalb County,* 774 F.2d 1567, 1574 (11th Cir. 1985)).  Thus, pretrial detainees who assert Fourteenth Amendment deliberate indifference claims are subject to the same law as Eighth Amendment deliberate indifference claims. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Cook*, 402 F.3d at 1115).

7

assignment was changed to accommodate his disability." (*Id.* at 19, para. 97). Because Allen only alleges that Thompson's "acts and omissions" (rather than those of Thompson's subordinates) violated his rights, the Court cannot discern how Count IV stands independently of Count II.[5] Because Allen's allegations in Counts II and IV mirror one another and support substantially the same theory of liability, the Court addresses them as one.

At this stage, for Allen to establish a claim of deliberate indifference under the Fourteenth Amendment, he must plead facts sufficient to show a constitutional violation as follows:

> 1. *First*, of course, the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'"
>
> 2. *Second*, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk."

---

[5] "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). That said, supervisory liability under § 1983 exists where, by the acts of subordinates, "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (citation and quotation omitted). But again, Allen does not allege any acts or omissions *of subordinates* which Thompson (a) participated in or (b) caused (1) by a failure to correct after notice of a history of widespread abuse or (2) by custom or policy. *See id.* at 1355–57.

*Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc) (internal citations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 839, 844–45 (1994)).  A plaintiff must also produce sufficient evidence of "causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (citing *Goebert*, 510 F.3d at 1326)).  Conduct that amounts to negligence is insufficient to establish deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *accord Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *see also Swain v. Junior*, 961 F.3d 1276, 1288 (11th Cir. 2020) ("It bears repeating that deliberate indifference is *not* a constitutionalized version of common-law negligence." (emphasis in original)).

Because Thompson asserts qualified immunity at the motion to dismiss stage, (doc. 37 at 1, para. 3), the Court "must conclude both that the allegations in the complaint . . . establish a constitutional violation *and* that the constitutional violation was clearly established" for the case against him to proceed. *Ingram v. Kubik*, 30 F.4th 1241, 1251 (11th Cir. 2022) (emphasis in original) (quoting *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019)).

As a threshold matter, qualified immunity only protects government officials from suit when they perform "discretionary functions." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Therefore, to successfully assert qualified immunity, "the public official [must] first show[] that []he was acting within the scope of h[is] discretionary authority." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).  If the public official makes that

showing, the burden then falls on the plaintiff "to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

Here, the parties disagree about whether Thompson acted within the scope of his discretionary authority. To determine whether a defendant was acting within the scope of his discretionary authority, courts "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Argument that a defendant acted outside his discretionary authority because he acted unlawfully is improper—"no more than an untenable tautology." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation marks and citations omitted).

Thompson has demonstrated he was acting within the scope of his discretionary authority. Allen alleges that Thompson "had the authority to move [him] to an [ADA-compliant living] assignment and wholly failed to do so." (Doc. 1 at 10, 15, 19 paras. 48, 74, 97). Because of Thompson's decision, Allen "was forced to use the shower," where the slip and fall occurred. (*Id.* at 10, para. 50). Incidentally then, Allen alleges that Thompson *had discretion* as part of his role at the Jail to make living assignments. Allen contends that Thompson "did not have discretion to choose if the Jail should comply with the ADA." (*See* doc. 47 at 9–10). This argument is an "untenable tautology" that misses the mark. *See Harbert Int'l*, 157 F.3d at 1282.

Instead, to resolve the discretionary authority question, this Court "look[s] to the general nature of [Thompson's] action." *See Holloman*, 370 F.3d at 1266. The proper scope of the inquiry is whether assigning inmates' living arrangements generally fell within Thompson's duties and authority. *See Cagle v. Sutherland*, 334 F.3d 980, 989 & n.12 (11th Cir. 2003) (analyzing the plaintiff's deliberate indifference claim against an Alabama jailer arising out of the jailer's failure to conduct hourly checks of the jail cells, rejecting the plaintiff's argument that the jailer "had no discretion on when to check the jail," and concluding that the jailer was acting within his discretionary authority because he was "performing his duties within the scope of his authority"); *cf. Jenkins v. DeKalb Cnty.*, 528 F. Supp. 2d 1329, 1337 (N.D. Ga. 2007) ("The [d]efendants in this case were acting within the scope of their discretionary authority in assigning [the plaintiff and his assailant] to any cell, whether or not they made a mistake and put [his assailant] in the 'wrong' cell."), *aff'd*, 307 F. App'x 390 (11th Cir. 2009).

On this record, the Court has little trouble concluding that Thompson exercised his discretionary authority in assigning Allen to a particular living area, notwithstanding Allen's allegations that Thompson did so "in an unconstitutional manner." *See Holloman*, 370 F.3d at 1266; *see also Harbert Int'l*, 157 F.3d at 1282. Thus, Thompson has demonstrated that he was exercising discretionary authority when he performed the acts of which Allen complains. Thus, the burden shifts to Allen to show that Thompson's conduct violated his clearly established constitutional rights.

1.   *Constitutional Violation*

For a deprivation to translate into deliberate indifference, it must be "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Where a claim is based "on a failure to prevent harm," to demonstrate an "objectively, 'sufficiently serious'" deprivation, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney,* 509 U.S. 25, 35 (1993)). Allen's well-pleaded factual allegations, viewed in the light most favorable to him, fail to establish that such risk existed (and necessarily that Thompson was aware of that risk).

The Court finds the Eleventh Circuit's opinion in *Hunt v. Warden*, 748 F. App'x 894 (11th Cir. 2018) (per curiam), instructive. In *Hunt*, a plaintiff with a disability that required mobility aids "spent fourteen days[6] in a non-handicap-accessible cell without access to a walker, a handicap-accessible toilet, or a handicap-accessible shower. [He] suffered back pain from using a non-handicap-accessible toilet. He also suffered mental and emotional distress, including suicidal thoughts, from his humiliation." *Hunt*, 748 F. App'x at 896. The Eleventh Circuit concluded that "[the] [p]laintiff's allegations do not demonstrate that lack of a handicap-accessible shower, toilet, and walker, along with his confinement in [a cell where he could not move his wheelchair] and other non-handicap-accessible cells, posed an unreasonable risk of serious damage to his health." *Id.* at 900. As a result, the plaintiff failed to sufficiently state a claim of deliberate indifference. *Id.*;

---

[6] From the record in this case, it is unclear how long Allen was at the Jail before the slip and fall.

12

*cf. Strominger v. Brock,* 592 F. App'x 508, 511 (7th Cir. 2014) ("Strominger first argues the district court erred in granting summary judgment on his Eighth Amendment claims concerning his transfer to a less accessible cell and the unsafe shower conditions. . . . But as the district court explained, the actions of these defendants were at most negligence."); *Reynolds v. Powell*, 370 F.3d 1028, 1031–32 (10th Cir. 2004) (stating that "slippery floors constitute a daily risk faced by members of the public at large," holding that "standing water" that resulted in a slip and fall did not pose a substantial risk of serious harm, even where prison officials knew of the issue prior to the prisoner's fall, the prisoner was on crutches, and the prisoner had warned the defendants he was at an increased risk of falling); *Davis v. Corr. Corp. of Am.*, 2008 WL 539057, at *3 (N.D. Fla. 2008) (stating "[c]ourts have regularly held that slip and fall accidents do not give rise to federal causes of action" and collecting cases).

The Court finds the circumstances of the present case substantially similar to those presented in *Hunt* and the other slip and fall cases cited above. Though Thompson allegedly was aware of Allen's need for mobility aids and thought his living situation was not ADA-compliant, Allen's allegations do not plausibly show that Thompson's failure to reassign Allen to a different area, like in *Hunt*, "posed an unreasonable risk of serious damage to [Allen's] health." *See* 748 F. App'x at 896; *see also Hunter v. Riverbend Corr. Facility*, 2023 WL 6389817, at *4 (11th Cir. 2023) (holding that a wet floor in a prison that resulted in a bone fracture necessitating a total knee replacement did not "pose[] a substantial risk of serious harm," and that, even if the prison officials knew about any risk, "the alleged failure to remedy the situation is something more akin to negligence"), *cert.*

13

*denied sub nom. Hunter v. Morris*, 145 S. Ct. 557 (2024). Accordingly, viewing the factual allegations in the light most favorable to Allen, they fail to establish that Thompson violated Allen's constitutional rights.

### 2. *Clearly Established*

Even if Allen established a constitutional violation, the Court would need to determine whether Allen's rights were clearly established in November 2022. Allen's rights were clearly established if "the state of the law at the time of the incident gave [Thompson] 'fair warning' that [his alleged] conduct was unlawful. *See Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (citation omitted). To establish a violation of clearly established law, this Court does not "require [Allen to locate] a case directly on point, but existing precedent must have placed the constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). In addition, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation omitted).

Allen can demonstrate that the law was clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right;
>
> (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or
>
> (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc) (quotation marks omitted).

14

Allen opts to go the second route, and cites *Slaughter v. Bryson*, 2018 WL 1400976, at *25 (S.D. Ga. 2018), for the proposition that clearly established *ADA law* (specifically, Title II; *Yeskey,* 524 U.S. at 209–10; and *Tennessee v. Lane*, 541 U.S. 509, 532 (2004)) gave Thompson fair warning that his alleged conduct was a violation of the Fourteenth Amendment. *See Perez*, 809 F.3d at 1222. This Court declines to follow that reasoning because the Supreme Court has indicated that the relevant law that is to be clearly established is the same law under which relief is sought. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 237 (2009) ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquir[y]. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, . . . ask whether *the right* was clearly established." (emphasis added)). Put another way, the cases cited by Allen do not show that Thompson's conduct violated clearly established *Fourteenth Amendment* rights, as demonstrated by the existing deliberate indifference case law discussed above.

Relatedly, proceeding as Allen suggests would entail permitting the assertion of claims under § 1983 for violations of Title II, a practice foreclosed by precedent. *Cf. Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) ("[A] plaintiff may not maintain a [§] 1983 action in lieu of—or in addition to—a[n] . . . ADA cause of action if the only alleged deprivation is of the employee's rights created by . . . the ADA."); *Badillo*, 158 F. App'x at 213; *Shotz v. City of Plantation*, 344 F.3d 1161, 1176–77 (11th

15

Cir. 2003); *see also Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998) (barring the same with regard to Title VII of the Civil Rights Act of 1964).

But even if the Court were to entertain Allen's argument, it fails on its own logic: Clearly established ADA law would not notify a reasonable person that the conduct at issue subjected them to liability under *ADA law*, much less the Fourteenth Amendment and § 1983, given that Title II regulates entities, not individuals. *See Harlow*, 457 U.S. at 818; *Mazzola v. Davis*, 776 F. App'x 607, 610 (11th Cir. 2019); *see also* discussion *supra* Part IV(A). Accordingly, Thompson's motion to dismiss is due to be GRANTED as to Allen's § 1983 claims.

## C.   Count V:  Negligence Claim

Finally, Allen alleges that Thompson:  "had a duty to ensure the Jail was ADA compliant," owed that duty Allen as a disabled individual, breached that duty by failing to ensure access to an ADA-compliant shower, and directly and proximately caused Allen's injuries by that breach. (*See d*oc. 1 at 20–21, paras. 105, 107, 110; *see also* doc. 47 at 17–18).

Thompson asserts state law immunity under Alabama Code § 14-6-1.[7] The statute, which provides immunity to jailers,[8] reads as follows:

---

[7] Allen and Thompson address the previous version of the statute, and neither party has filed supplemental briefing on the statutory change made effective October 1, 2025.  Accordingly, the Court analyzes their arguments under the pre-October 1, 2025 statute. *Cf. Johnson v. Conner*, 754 F.3d 918, 919 (11th Cir. 2014) (noting the presumption of non-retroactivity of changes to state statutory immunity).  Even if the Court had analyzed Thompson's assertion of immunity under the current version of the statute, it would not change the Court's conclusion that Thompson is entitled to immunity.

[8] *See Johnson*, 754 F.3d at 920 (discussing history behind the change).

> The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, *as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law*.

ALA. CODE § 14-6-1 (emphasis added). The burden of establishing this immunity is on the individual asserting it. *Ex parte City of Bessemer*, 142 So.3d 543, 552 (Ala. 2013) (citation omitted). At the motion to dismiss stage, Thompson carries that burden by pointing to the inadequacy of the complaint in alleging nondiscretionary action and noncompliance with the law. (*See* doc. 39 at 11–14); *cf. Roberson v. Walker*, 333 F. Supp. 3d 1301, 1308–09 (N.D. Ala. 2018) (finding defendants established absolute immunity under § 14-6-1 where "[n]othing alleged in the [c]omplaint show[ed] that [they] were not acting in the line and scope of their duties").

Allen alleges that Thompson was responsible, as the Jail's shift sergeant, for the living assignments of inmates. (Doc. 1 at 3, para. 4). His failure to assign Allen to a particular living area was thus action within the line and scope of his duties. *See also* discussion *supra* Part IV(B). To be entitled to immunity under § 14-6-1, Thompson must also have acted "in compliance with the law." ALA. CODE § 14-6-1.

Allen argues that the complaint asserts that Thompson "failed to comply with the ADA, the United States Constitution, and Alabama law." (Doc. 47 at 20). However, as

17

addressed earlier, Allen has not stated a claim against Thompson under either the ADA or the United States Constitution.[9] The only alleged violation of Alabama law by Thompson is common law negligence. (*See generally* doc. 1). "The elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009). Under Alabama law, a federal statute may provide a duty for the purposes of negligence claims.[10] *See Allen v. Delchamps, Inc.*, 624 So. 2d 1065, 1067–68 (Ala. 1993). Indeed, Allen's negligence claim is premised upon his allegations that Thompson owed him duties to "ensure that the Jail was ADA compliant" and to provide him access to "a shower equipped with ADA compliant safeguards." (*See id.* at 20, paras. 105, 107).[11] As addressed more fully *supra* Part IV(A), Title II of the ADA does not apply to individuals. Because Allen rests his negligence claim on Thompson's duties purportedly arising under

---

[9] For this reason, the cases cited by Allen for the proposition that a plausibly alleged deliberate indifference claim necessarily indicates noncompliance with the law are inapposite here. *See, e.g., Foster v. Maloney*, 785 F. App'x 810, 818–19 (11th Cir. 2019) (citing *Taylor v. Hughes*, 920 F.3d 729, 734–35 (11th Cir. 2019)).

[10] Thompson cited *White v. NCL America, Inc.* for the proposition that "[p]lainitff[s] may not use the ADA's standards alone to impose a duty" for negligence claims. 2006 WL 1042548, at *6 (S.D. Fla. 2006). However, that case concerned the viability of *Title III* of the ADA to set a duty of care under *Florida* law. *See id.* at *5–6. Thus, the Court finds *White* inapposite for present purposes.

[11] In his response brief, Allen attempts to enlarge Thompson's duty to include "an established duty through the Eighth and Fourteenth [A]mendments to ensure [his] reasonable safety at the [J]ail." (Doc. 47 at 18) (citing *Farmer*, 511 U.S. at 835). However, a complaint cannot be amended through subsequent briefing. *Sticher v. Indymac Fin. Servs., Inc.*, 2014 WL 12284025, at *1 (N.D. Ga. 2014) ("[I]t is well-established that a party cannot amend his or her complaint via legal argument in a response brief. Instead, a formal motion for leave to amend a complaint must be filed so that the court can evaluate the merits of a plaintiff's amended claim."). Even if the Court did entertain Allen's assertion of an enlarged duty, *Farmer* creates a duty of care higher than the ordinary standard for negligence. 511 U.S. at 835 ("Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Swain*, 961 F.3d at 1288. Further, this Court also found, for the purposes of qualified immunity, that the conduct in the present case did not constitute deliberate indifference. *See* discussion *supra* Part IV(B). Thus, even considering Allen's negligence claim based on this enlarged duty—which he did not adequately plead—it would not change the Court's conclusion that the claim is due to be dismissed.

the ADA, Allen's assertion that Thompson failed to comply with Alabama law amounts to an assertion that Thompson failed to comply with the ADA, and the Court has rejected this position. Thus, on this record, the Court concludes that Thompson acted in compliance with the law within the meaning of § 14-6-1.

Because Thompson "acted in compliance with the law," he is entitled to "the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama." *See* ALA. CODE § 14-6-1. Under the Alabama Constitution, a sheriff is an enumerated member of the state's executive department. ALA. CONST. Art. V. § 112. The Alabama Constitution further states that "the State of Alabama shall never be made a defendant in any court of law or equity." ALA. CONST. Art. I § 14. This constitutional provision, which the Alabama Supreme Court has held covers sheriffs, has been variously "described as a 'nearly impregnable' and 'almost invincible' 'wall' that provides the State an unwaivable, absolute immunity from suit any in any court." *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1206 (Ala. 2006) (citations omitted); *but see Ex parte Donaldson*, 80 So. 3d 895, 898 n.1 (Ala. 2011) (noting several exceptions—not implicated in the present case—to state immunity for sheriffs). Thus, Thompson is entitled to immunity under § 14-6-1, and Allen's state law negligence claim against Thompson is barred.[12] Accordingly, Thompson's motion to dismiss is due to be GRANTED as to Count V.

---

[12] Even if Thompson were not entitled to immunity under § 14-6-1, Allen's negligence claim would nonetheless fail because he fails to plausibly allege that Thompson breached a duty. As explained above, Allen rests his negligence claim on Thompson's duties purportedly arising under Title II of the ADA, but the Title II imposes no duty on individuals.

## V. CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED that Thompson's motion to dismiss (doc. 37) is GRANTED, and the claims against Thompson (Counts I, II, IV, and V) are DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to terminate Defendant Thompson as a party to this case.

DONE this 23rd day of February, 2026.

         /s/ Emily C. Marks
        EMILY C. MARKS
        UNITED STATES DISTRICT JUDGE